UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00056-GNS-HBB

ELITE LABOR SERVICES, LTD.                                                                         PLAINTIFF

v.

PCIJVKY, INC., et al.                                                                               DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 97). For the reasons discussed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.     STATEMENT OF FACTS

On September 26, 2016, Elite Labor Services, Ltd., through its wholly-owned subsidiary, Elite Logistic Services, Inc. ("Elite" or "Plaintiff"), entered into a contract with a New Jersey corporation, PCIJVKY, Inc. ("PCIJVKY"), to provide labor services to construct portable emergency shelters in Auburn, Kentucky. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 20, DN 107-20). Elite was told its services were being provided to fulfill PCIJVKY's contract with the Federal Emergency Management Agency ("FEMA") to manufacture the shelters. (Zirin Dep. 38:16-18, Nov. 13, 2019, DN 107-15). Elite's executive vice president, Jonathan Zirin ("Zirin") negotiated the contract with Hua Chau ("Chau"), a member of Templar Global Solutions, LLC ("Templar"). (Zirin Dep. 22:9-12). Zirin was told payment under the contract would be provided by two other corporations, Polish Connection, Inc. ("PCI") and Denaro Associates, Inc. ("Denaro"). (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 16, ¶ 5, DN 107-16). From October 3, 2016 to November 15, 2016, Elite provided services totaling $565,157.00. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 19, ¶ 10, DN 107-10). Elite terminated its agreement with PCIJVKY on November 15, after receiving

no payment on its first and second invoices. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 26, DN 107-26).

On March 28, 2017, Elite filed this action asserting claims for breach of contract, *quantum meruit*, and fraud against PCIJVKY, Chau, Joseph Morra ("Morra"), and Brian McDaniel ("McDaniel"). (Compl. ¶¶ 23-52, DN 1). On May 11, 2017, Elite filed an Amended Complaint asserting an additional claim for civil conspiracy and naming as additional Defendants: PCI; Andrzej Zaniewski, ("Zaniewski"); Templar; Denaro; Pawel Lach ("Lach"); and AIM Solutions, LLC ("AIM"). (Am. Compl. ¶¶ 6-11, ¶¶ 57-59, DN 14).[1] On April 28, 2020, PCI and Zaniewski ("Defendants") moved for summary judgment on Plaintiff's civil conspiracy and fraud claims, the only claims asserted against them. (Defs.' Mot. Summ. J., DN 97). Plaintiff responded, and Morra and Templar responded separately; Defendants replied to both. (Pl.'s Resp. Defs.' Mot. Summ. J., DN 107; Defs.' Resp. Defs.' Mot. Summ. J., DN 101; Defs.' Reply Mot. Summ. J., DN 112 [hereinafter Defs.' Reply]; Defs.' Reply Mot. Summ. J., DN 113). Defendants' motion is ripe for decision.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support

---

[1] The Clerk of Court entered an order for entry of default against PCIJVKY, McDaniel, AIM, PCI, Zaniewski, Chau and Denaro. Pawel Lach, president of Denaro, has not been served. (Order, DN 36; Order, DN 44). On February 22, 2018, the Court vacated the order of default against PCI and Zaniewski. (Mem. Op. & Order, DN 50). Accordingly, the remaining Defendants are Templar, Morra, PCI, and Zaniewski.

an essential element of the nonmoving party's case for which it has the burden of proof. *See id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish the existence of a disputed factual element essential to its case with respect to which it bears the burden of proof. *See id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *See Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Wilson v. Osborne*, No. 4:09CV-P82-M, 2010 WL 4024807, at *1 (W.D. Ky. Oct. 13, 2010) (citation omitted).

### III. DISCUSSION

#### A. Parties Responsible

Defendants contend Elite's fraud claim fails as a matter of law because Elite admitted it did not speak directly with PCI or Zaniewski. (Defs.' Mem. Supp. Mot. Summ. J. 5, DN 97-1; Zirin Dep. 10:25-11:23, 51:17-58:1; Kirchberg Dep. 18:9-23, Nov. 13, 2019, DN 97-3). Elite contends that PCIJVKY was a "joint venture" between PCI, Templar, Denaro, and others, such that misrepresentations made by one co-venturer is imputed to the other. (Pl.'s Resp. Defs.' Mot.

Summ. J. 15-16). Defendants maintain that Elite mischaracterizes the membership of PCIJVKY and that PCIJVKY, not PCI or Zaniewski, is the named party in the staffing agreement with Elite. (Defs.' Reply 1-2). Defendants argue the only agreement PCI entered into was a separate contract with Templar, not with Zaniewski personally, or any other party for that matter. (Defs.' Reply 1-2).

The search of the New Jersey Secretary of State's records reflects there is not, nor has there been, a corporation named PCIJVKY.[2] (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 40, DN 107-40). Rather, PCIJVKY was a "group of investors" doing business under the name PCIJVKY, for the purpose of entering into contracts to build and sell emergency shelters. (Zirin Dep. 15:22-24; Morra Dep. 28:24-29:3, June 10, 2020, DN 107-12). Initially, Zaniewski's father, Andrzej ("Kaz") Zaniewski, was made attorney-in-fact to negotiate contracts for purposes of building these shelters in Kentucky. (Zaniewski Dep. vol. 1, 20:13-17, Nov. 14, 2019, DN 107-8). Kaz eventually met with Chau, a member of Templar, in the summer of 2016 to discuss forming a venture. (Zaniewski Dep. vol. 1, 65:25-66:5). Later in the summer, Kaz met with Piotr, president of Denaro, Chau and another member of Templar, Morra, to discuss forming a venture between them all. (Morra Dep. 25:2-27:3). At the meeting Kaz told of an existing government contract to purchase the shelters. (Morra Dep. 25:13-19). Ultimately, the venture was comprised of 10 sub-ventures, memorialized in part by written agreements between PCI and Templar, and Templar and Denaro, respectively. (Pl.'s Resp. Defs.' Mot. Summ. J. 5; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 13, DN 107-13; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 14, DN 107-14). PCI and Templar entered into a contract for Templar to build shelters in Kentucky. (Morra Dep. 29:8-31:7). Templar contracted separately

---

[2] The Court takes judicial notice of this fact. *See Olbers v. Thompson*, No. 3:16-CV-521-DJH, 2017 WL 3671328, at *7 (W.D. Ky. Aug. 25, 2017) (taking judicial notice of records of Texas Secretary of State).

with Denaro to screen laborers at the worksite, and Chau represented to Elite that Denaro would provide capital as well. (Zaniewski Dep. vol. 1, 62:18-64:20; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 18, at 3, DN 107-18).

A joint venture is "an informal association of two or more persons, partaking of the nature of a partnership, usually, but not always, limited to a single transaction in which the participants combine their money, efforts, skill, and knowledge for gain, with each sharing in the expenses and profits or losses." *Roethke v. Sanger*, 68 S.W.3d 352, 364 (Ky. 2001) (citations omitted). The elements essential of a joint venture are:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Huff v. Rosenberg*, 496 S.W.2d 352, 355 (Ky. 1973) (citation omitted). As to the third element, "it is necessary to the relationship that there be a sharing of the profits and losses; though in the absence of an express agreement, the sharing of losses may sometimes be implied from an express agreement to share profits." *Roethke*, 68 S.W.3d at 364 (citation omitted). "The liability that would attach under either a partnership theory or a joint enterprise is the same because both theories are unequivocally the same." *Abbott v. Chesley*, 413 S.W.3d 589, 604 (Ky. 2013) (citation omitted). Specifically, "one partner is bound by the knowledge of another, bound by his wrongful and fraudulent act, bound by his breach of trust." *Fightmaster v. Leffler*, 556 S.W.2d 180, 182 (Ky. App. 1977); *see also Eppes v. Snowden*, 656 F. Supp. 1267, 1279 (E.D. Ky. 1986).

Although, Morra testified PCIJVKY consisted of both corporate entities and individuals, no formal agreement to share profits or losses between the three corporations and individuals has been provided. (Morra Dep. 19-23). Regardless, PCI acknowledges the existence of a contract with Templar for the purpose of constructing emergency shelters in Kentucky. (Defs.' Reply 1).

The contract also provided for management of the venture for its common purpose, as evidenced by Morra's testimony that Kaz, on behalf of PCI, was the "CEO" of the venture who was "controlling the whole thing", and the acknowledgements that Morra signed the contract with Elite, on behalf of Templar, and that Chau acted for the venture to acquire Kentucky tax incentives, on behalf of Templar. (*See* Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 13; Morra Dep. 32:15-23; Defs.' Reply 9; Defs.' Reply Mot. Summ. J. Ex. A, DN 112-1; Defs.' Reply Mot. Summ. J. Ex. B, DN 112-2). Accordingly, at a minimum, PCI and Templar could be found to be joint venturers for the purpose of building the shelters in Kentucky. In addition, as Chau allegedly made misrepresentations to Elite during negotiations, and Morra signed the contract listing PCIJVKY as a corporation, Templar could be liable for these acts. *J. J. Newberry Co. v. Judd*, 82 S.W.2d 359, 362 (Ky. 1935) ("[T]he rule of liability embraces . . . all tortious acts authorized by [the principal] or done in pursuance of any general, special, or implied authority to act in its behalf . . . ."). Similarly, PCI could be bound by these misrepresentations made throughout the venture's relationship with Elite. *See, e.g.*, *Fightmaster*, 556 S.W.2d at 182.

### B.   **Fraud**[3]

Elite contends Defendants made four misrepresentations throughout their relationship: (1) PCIJVKY was a New Jersey corporation; (2) Elite's services would be to provide labor for a project to build the shelters under a government contract; (3) a late payment on the first invoice was being arranged; and (4) Elite would be paid from money provided by PCI and Denaro, as "the

---

[3] Defendants argue Elite's First Amended Complaint fell short of the pleading requirements under Rule 9(b). "The Sixth Circuit has made clear, however, that failure to follow pleading requirements is not grounds for dismissal of a claim at the summary-judgment stage." *Hall v. Rag-O-Rama, LLC,* No. 18-12-DLB-CJS, 2020 WL 2134121, at *16 n.22 (E.D. Ky. May 5, 2020) (citing *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 469, 478 n.2 (6th Cir. 2014)); *see also Kamps, Inc. v. Mustang Aviation, Inc.*, No. 5:18-CV-430-REW, 2020 WL 1492761, at *7 n.7 (E.D. Ky. Mar. 27, 2020).

money was always there" and, therefore, a fourteen-day turnaround for invoice payments was no problem. (Pl.'s Resp. Defs.' Mot. Summ. J. 15-18).

In Kentucky, a plaintiff must demonstrate the following elements by clear and convincing evidence to succeed on a fraud claim: (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew that the representation was false or made the representation recklessly, (4) the defendant made the representation with the intention that it to be acted on, (5) the plaintiff acted upon the representation in reliance thereon, and (6) this caused injury to the plaintiff. *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 188 (Ky. App. 2014). "The courts of the Commonwealth have long recognized that parties contemplating the commission of fraud do not usually blow a horn or beat a drum to call attention to what they are doing, and have accordingly held that frauds may be established by circumstances." *Hall*, 2020 WL 2134121, at *17 n.25 (citations omitted).

Elite contends Defendants lied about the corporate status of PCIJVKY in the staffing agreement.[4] (Pl.'s Resp. Defs.' Mot. Summ. J. 16). The contract lists PCIJVKY as "a New Jersey Corporation.", but PCIJVKY was never incorporated. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 20, at 1). Defendants respond that Zirin testified he was told PCIJVKY was rather a "group of investors". (Zirin Dep. 18:4-12). Zirin's testimony, however, does not say he was told PCIJVKY *was not* a corporation, merely that PCIJVKY was a group of investors. Defendants argue even if they misrepresented PCIJVKY's corporate existence, Elite could not have justifiably relied upon it. (Defs.' Mem. Supp. Mot. Summ. J. 6-7). "[T]he plaintiff's reliance on the material

---

[4] Ironically, it appears that Plaintiff was not damaged by this representation: if PCIJVKY *had been* incorporated but simply breached its obligations under the contract, Elite would have no recourse other than a judgment against an insolvent debtor. As it stands, the lack of a viable corporation, Elite does have viable claims against all parties to the venture.

7

representation must be reasonable." *Preferred Care of Del., Inc. v. Crocker*, 173 F. Supp. 3d 505, 523 (W.D. Ky. 2016) (citation omitted). "[W]hether reliance is justified (or as sometimes stated, reasonable) is a question of fact in all but the rarest of instances." *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 47 (Ky. 2018). Elite acknowledged doing a credit check under "PCIJVKY, Inc." before signing the agreement and that the search revealed no entity such as PCIJVKY, Inc. (Defs.' Mem. Supp. Mot. Summ. J. 6-7; Zirin Dep. 24:15-25:19, 71:8-20). Elite's point out that the contract listing PCIJVKY as a New Jersey corporation was signed *after* Elite conducted a credit check, however. (Defs.' Mem. Supp. Mot. Summ. J. 6-7). Accordingly, there remains a question of fact whether Elite justifiably relied on the later contractual misrepresentation despite having previously conducted the credit check.

Similarly, Elite claims Chau misrepresented that Elite's labor would be used for the project under an existing government contract. (Pl.'s Resp. Defs.' Mot. Summ. J. 15; Zirin Dep. 38:16-18). Defendants argue Zirin testified he was informed the project was to construct emergency housing under a government *program* or using government *grants*. (Defs.' Reply 10-11; *see* Zirin Dep. 39:1-6). Zirin further testified, however, that he was told other parties "*had obtained* a contract, for what they were then going to be building . . . ." (Zirin Dep. 63:23-24 (emphasis added)). Elite has responded with evidence that Zirin was informed of an existing contract, and therefore, a genuine issue of material fact remains on this point.

Elite further asserts Chau falsely told Zirin that Elite's invoices would be paid from money provided by PCI and Denaro, as the money was always there and, therefore, a fourteen-day turnaround for invoice payments was no problem. (Pl.'s Resp. Defs.' Mot. Summ. J. 14-15). These statements would be false to the extent PCI acknowledged it did not have the ability to pay at the time the venture requested Elite supply the labor. (Zaniewski Dep. vol. 1, 62:18-20).

8

Defendants contend Elite is essentially alleging the venture promised it would pay in the future, and therefore, the fact that PCI did not have the funds when the invoices came due is a breach of contract, not fraud. (Defs.' Reply 5-10). For a declarant's misrepresentation to be used as the basis for fraud, it must relate to an existing or past fact. *Edward Brockhaus & Co. v. Gilson*, 92 S.W.2d 830, 834 (Ky. 1936). A plaintiff may, however, assert fraudulent inducement based on a defendant's promise to perform in the future when the defendant "knew at the time the representations were made he had no intention of carrying them out." *Major v. Christian Cty. Livestock Mkt., Inc.*, 300 S.W.2d 246, 249 (Ky. 1957) (citation omitted). "[A] fraudulent inducement claim can coexist with a breach of contract claim." *Boodram v. Coomes*, No. 1:12-CV-00057-JHM, 2016 WL 3248518, at *3 (W.D. Ky. June 10, 2016) (citation omitted).

Defendants cite Zaniewski's statement that the venture hoped to obtain funds in the future from financiers, incentives, grants, and eventually, contracts with purchasers, as evidence that they intended to pay Elite. (Defs.' Reply 9; Zaniewski Dep. vol. 1, 63:9-11). Likewise, Defendants point to the fact that the venture acquired tax incentives with two different programs through the Kentucky Economic Development Finance Authority. (Defs.' Reply 9; Defs.' Reply Mot. Summ. J. Ex. A; Defs.' Reply Mot. Summ. J. Ex. B). Although Defendants point to their funding prospects, Elite contends that PCI represented it would provide the funds when the invoices came due, not when future investors or purchasers provided the funds, and, more importantly, Elite was "always told the money was there." (Zirin Dep. 39:14-15).

Elite points out that prior to 2016, PCI never built any shelters nor had the capital to do so. (Pl.'s Resp. Defs.' Mot. Summ. J. 21). Furthermore, Elite references a litany of so-called "successor entities" that various Templar, PCI, and Denaro parties continued to form after the agreement went south, which demonstrate Defendants "began making arrangements to flee

9

Kentucky while Plaintiff was still supplying labor to construct the Prototype Shelters." (Pl.'s Resp. Defs.' Mot. Summ. J. 9). For example, on November 10, the same day Chau assured Zirin that PCIJVKY would wire payment on Elite's invoice, Chau, Piotr, Kaz, and others incorporated Global Manufacturing Corporation ("Global Manufacturing") in Tennessee, for which Zaniewski was an officer and Kaz a director. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 29, DN 107-29; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 30, DN 107-30). Chau and others later executed a contract providing Global Manufacturing would be responsible for the debt owed to Elite, and that Global Manufacturing and Denaro were to pay Elite's expenses. (Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 31, DN 107-31). This, of course, never occurred. Chau's and other parties' purported attempt at corporate-camouflage could support the inference that when Chau promised that PCI would pay Elite, he had no intention of following through with that representation.

Finally, Elite contends Chau lied in his November 10, 2016, email when he said: "[w]e will be setting up a wire transfer for early next week either on Monday or Tuesday." and followed this up claiming, "I have sent the email to Denaro and they are arranging payment." (*See* Pl.'s Resp. Defs.' Mot. Summ. J. 17-18; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. 24, DN 107-24). Elite states that, in response to the November 10 email from Chau, it relied by supplying $149,522,65 in additional labor. (Pl.'s Resp. Defs.' Mot. Summ. J. 17-18). Accordingly, the evidence could be construed as a promise to pay the invoices when they came due and, therefore, a question of fact remains whether Elite relied on these emails in supplying labor for the balance of the contract. The Court, therefore, denies Defendants' motion for summary judgment on Elite's fraud claims.

On the other hand, Elite does not dispute Defendants' contention that there is no proof that Zaniewski, personally, agreed to share profits and losses with any Defendants, or any others for a common purpose and with a personal right to control. (Defs.' Reply 1-2). Accordingly, as Elite

admits Zaniewski never personally spoke with Elite, Elite's fraud claims against Zaniewski in his individual capacity will be dismissed.

C. **Civil Conspiracy**

Civil conspiracy is "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means." *Smith v. Bd. of Educ. of Ludlow*, 94 S.W.2d 321, 325 (Ky. 1936). The burden is on the Plaintiff to prove each element. *James v. Wilson*, 95 S.W.3d 875, 896 (Ky. App. 2002).

PCI and Zaniewski maintain that Elite cannot prove a corrupt agreement between them and any other party, as shown by the fact that Elite admits it never spoke with either PCI or Zaniewski. Accordingly, Defendants argue, there is no indication they were aware of the details regarding the agreement with PCIJVKY or the surrounding negotiations. (Kirchberg Dep. 16:4-15). "[A] principal is charged with notice of facts that an agent knows or has reason to know." *BancInsure, Inc. v. U.K. Bancorporation Inc./United Ky. Bank of Pendleton Cty., Inc.*, 830 F. Supp. 2d 294, 302 (E.D. Ky. 2011) (citations omitted). As a preliminary matter, Elite contends that Kaz was acting on behalf of PCI, Zaniewski, or both. Zaniewski's testimony is inconsistent, and Defendants have not produced a document that authorized Kaz as either party's attorney-in-fact. (*See* Zaniewski Dep. vol. 2, 110:3-8, Nov. 20, 2019, DN 107-7 ("A. Well, the joint venture itself, my father was there on my behalf in Kentucky. Q. Did you delegate your duties to your father? A. Yes, to – what's the word – negotiate on PCI's behalf."); Zaniewski Dep. vol. 2, 20:16-17) ("Q. And what is [Kaz's] position at PCI? A. He had power of attorney Kentucky.")). If Kaz was acting as an agent, his actions and knowledge could be imputed to PCI or Zaniewski. Furthermore, the alleged tortious conduct of Chau and Morra occurred during negotiations to fulfill

11

Templar's underlying contract with PCI, of which Zaniewski was the sole employee and majority shareholder.

Defendants argue that even if they were aware of the ongoing negotiations, Elite has only shown they were negligent and not that they took an overt tortious act in furtherance of the conspiracy. (Defs.' Mem. Supp. Mot. Summ. J. 10-11). Because civil conspiracy requires specific intent, "[m]erely proving the joint intent to engage in conduct that results in an injury is not sufficient to establish a cause of action for civil conspiracy." *Powell v. Tosh*, 929 F. Supp. 2d 691, 715 (W.D. Ky. 2013), *opinion vacated in part on reconsideration*, No. 5:09-CV-00121-TBR, 2013 WL 1878934 (W.D. Ky. May 3, 2013) (alteration in original) (citation omitted). The "gist of the civil action for conspiracy is the act or acts committed in pursuance of the conspiracy, not the actual conspiracy." *James*, 95 S.W.3d at 897 (citation omitted). A plaintiff must show Defendants were either "directly involved with the tortious act, [knew] of the tortious act and provide[d] substantial assistance or encouragement with respect thereto, or provide[d] substantial assistance to another who achieves a tortious result, while his own acts separately constitute a breach of duty to the third person who was harmed." *Knight v. Stewart Title Guaranty Co*, No. 07-87-DLB, 2014 WL 4986676, at *16 (E.D. Ky. Oct. 6, 2014) (citation omitted). "[M]ere negligence is not sufficient to support a claim for civil conspiracy." *Peoples Bank of N. Ky., Inc. v. Crowe Chizek & Co. LLC*, 277 S.W.3d 255, 261 (Ky. App. 2008). Plaintiffs, however, "do not have to assert that [defendants] [are] liable for fraud for [them] to be liable for civil conspiracy." *SAAP Energy, Inc. v. Bell*, No. 1:12-CV-00098-JRW-HBB, 2020 WL 5044145, at *10 (W.D. Ky. Aug. 26, 2020) (citation omitted). Regarding the individual capacity claim against Zaniewski, "a principal shareholder and officer of the corporation, 'is personally liable for a tort committed by him

although he was acting for the corporation.'" *Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989) (citation omitted).

Elite's proof is that Kaz negotiated the initial venture with Chau, who then represented to Elite that PCI intended to pay. Kaz also falsely told Chau and others of the existence of a government contract, which Chau reported to Elite. Ultimately, therefore, "[b]ecause [Kaz] was intimately involved in [Chau's] transactions, he likely knew about the fraudulent nature of these transactions." *SAAP Energy, Inc.*, 2020 WL 5044145, at *10. As this knowledge may be imputed to Zaniewski and PCI, a reasonable inference could be made that they intentionally deceived Elite into the deal. *See Clark v. Bucyrus Int'l*, No. 5:08-434-JMH, 2010 WL 996471, at *4 (E.D. Ky. Mar. 17, 2010) ("[C]ivil conspiracy against Defendants in this case is based on Defendants' intentional omission or passive concealment of material facts . . . ." (citation omitted)). Accordingly, there remains a genuine issue regarding whether Zaniewski or PCI knowingly provided assistance in furtherance of a conspiracy to defraud Elite. The Court, therefore, denies Defendants' motion as to this claim.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment (DN 97) is **GRANTED IN PART** and **DENIED IN PART**.

Greg N. Stivers, Chief Judge
United States District Court

February 23, 2021

cc: counsel of record